**Application of John PAVLECKA.**

Patent Appeal No. 7056.

United States Court of Customs and Patent Appeals.

Feb. 6, 1964.

Rehearing Denied April 1, 1964.

John Pavlecka, pro se.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 4, 23, 24, 36–38, 41, 45, 47, 48, 50, 53 and 55–59 in application serial No. 632,601, filed January 4, 1957, entitled "Interlocked Panel Structure." Twenty-six claims were allowed by the examiner.

The invention relates to joints for fastening together panels, walls and the like. The joints are particularly useful where the interior space between panels is inaccessible and when simple assemblage is desired. Basically the joint comprises a mortise-and-tenon, assembled frontally and keyed with linear rods of various shapes. The following drawings from appellant's specification illustrate one embodiment:

Fig. 1.

Fig. 2.

Fig. 3.

In Fig. 1, 1 and 2 are portions of walls or panels being assembled; 3 and 4 are stringers attached to the walls or panels; and 8 and 9 are shoulders with reentrant portions such as 10 defining, with base 11, a dovetail mortise. Tenon 16 is narrower at its widest point than the mortise opening (note dimensioning arrows) thus permitting frontal entry of the tenon. Fig. 2 shows the mortise-and-tenon in juxtaposed engaged relation with marginal lands 8 and 13, 9 and 14 (Fig. 1) in abutment. Blocking keys 19 and 20 are inserted (Fig. 3) preventing exit of the tenon from the mortise and rigidly holding the resultant joint.

Appellant discloses variations in shape and size of both mortises-and-tenons and blocking keys. However, all disclosed embodiments have in common an oversized mortise into which a tenon is frontally insertable, the unit held rigid by a suitably shaped blocking key inserted longitudinally of the mortise-and-tenon.

Figs. 4 and 16 show two of the many variations.

*Fig. 4.*

*Fig. 16.*

In Fig. 4, the blocking keys 19a and 20a are connected by web 21 forming a unitary C-shaped key. Fig. 16 shows a single panel (upper unnumbered edge), which is attached to stringer 114 and connected via zig-zag key 119 and stringers 115 and 116 to two panels (lower unnumbered edges). Blocking key 119 serves the dual function of holding the lower two abutting panels to one another and parallel to the upper single panel. Appellant's disclosure also shows embodiments wherein panels are joined at corners and airfoils are fastened together.

All claims on appeal have in common recitation of the mortise-and-tenon wherein frontal entry of the tenon is made possible by an oversized mortise, the unit held rigid by linear blocking keys. The claims differ only in features such as arrangement of panels, position of stringers on panels, number of stringers on panels, number of mortises-and-tenons per stringer, etc. Appellant conceded at oral argument that the claims would stand or fall together since but one inventive concept is involved. Claim 4 is representative and reads:

4. In a structure, a panel, a structural member extending along one face of said panel, a stringer extending on said panel face in opposed alinement with said structural member, said structural member and said stringer bearing marginal shoulders and ledges at a distance from said panel face and between said shoulders and ledges bearing reentrant mortise-and-tenon instrumentalities, said instrumentalities having each mortise thereof wider than each tenon and being entered into each other in a direction normal to said panel face and into confronting positions of said shoulders with said ledges and with a gap between at least the reentrant portions thereof, a linear key or keys slid endwise into each gap and by engagement at said reentrant portions of said instrumentalities said key or keys blocking said structural member and stringer against separation in said

normal direction and urging each into abutment with the other at said shoulders and ledges thereof for relative immobility and coaction as a unitary stress member for said panel.

The sole ground of rejection is unpatentability over the following art:

| Guimonneau | 1,388,181 | Aug. 23, 1921 |
| London | 2,164,138 | June 27, 1939 |
| French Patent | 924,327 | Aug. 1, 1947 |
| Swedish Patent | 121,639 | May 11, 1948 |

The claims were rejected as follows:

(1) Claims 4, 23, 24, 38, 41, 45, 47 and 55—unpatentable over London in view of Guimonneau;

(2) Claim 53—unpatentable over London in view of Swedish patent;

(3) Claims 36, 37, 48 and 50—unpatentable over Swedish patent; and

(4) Claims 56–59—unpatentable over French patent in view of Guimonneau.

### Rejection (1)

London teaches a structure utilizing mortises-and-tenons for snapping together panels or walls. Fig. 4, relied on by the examiner and the board and reproduced in part below, shows mortises 54 into which are inserted tenons 58.

Fig. 4.

The examiner recognized the differences in appellant's and London's mortise-and-tenon, stating:

"The mortise-and-tenon joint of London is recognized not to be the precise type of mortise-and-tenon joint as that claimed by appellant, but the London mortise elements 54ª, 54ᵇ, 54ᶜ and tenon elements 58 are resilient, thus permitting these London components to be 'entered into each other in a direction normal to said panel face and into confronting positions of said shoulders with said ledges' as claimed."

Guimonneau is cited to show the frontal entry dovetail aspect of appellant's invention. Fig. 1 of the reference is reproduced below:

*Fig.1*

The Guimonneau patent, entitled "Building Wall," states:

"This invention relates to a dismountable wall built without using mortar. According to this invention, molded blocks or slabs of a thickness adapted to form one part of that of the wall to be built are provided on one side with dovetail tenons which are placed between similar tenons on similar blocks oppositely arranged and adapted to form the other part of the thickness of the wall, the laterally inclined faces of said dovetail tenons being also inclined vertically so as to provide between adjacent tenons on opposite blocks downwardly tapering chambers into which downwardly tapering wedges are dropped so as to lock the blocks together. The design of the blocks is such that in building the wall the joints may be staggered in the vertical as well as in the horizontal direction.

\* \* \* \* \* \*

"As shown in Fig. 1, each block or slab 1 of a suitable thickness to form a part of the thickness of the wall is provided on one face with a plurality of projections or tenons 2 extending parallelly to the small sides of the slab from the bottom face to the top face and at right angles to the general plane thereof. These tenons may have the general shape of dovetails the larger bases of which are all in the same plane

parallel to the other flat face of the block and they are spaced at an equal distance apart from each other. The inclined faces 3 of each dovetail tenon are not perpendicular to the upper and lower faces of the block. Said inclined faces are also slightly inclined with respect to the vertical line so that the area of the horizontal section of the tenon is greater at the bottom than at the top. However the two sides 4 of each tenon are perpendicular to the vertical faces of the blocks, i. e. the lateral projection $s$ remains constant throughout the entire height of the block."

The examiner states:

"The Guimonneau patent shows a mortise-and-tenon joint upon which the following portion of \* \* \* [claims 4, 23, 24, 38, 41, 45, 47 and 55] is considered directly readable. It is believed that the substitution of the Guimonneau joints for those of London would be obvious to any skilled workman in this art if it were found that the resiliency of the London mortise-and-tenon means was unsatisfactory. The Guimonneau mortise (Fig. 1) is wider than his tenon 2 and the tenons are positioned in the mortises by direct frontal entry \* \* \*. The claimed 'linear key or keys slid endwise into each gap and by engagement at said reentrant portions of said instrumentalities \* \* \* said panel' (end of claim 4) is readable on the Guimon-

neau wedges or blocks 5 which are inserted into the reentrant gap between the opposed faces of each mortise and tenon. It is believed obvious that these wedges 5 could be inserted in a direction axial to the view of element 5, Fig. 1, a point argued by appellant. It is the Examiner's position * * * that the Guimonneau wedges 5 are the full equivalents of the claimed 'keys' or 'blocks' or 'chocks', since they may obviously be inserted longitudinally as well as vertically."

The board sustained the examiner stating:

"In our opinion no invention would be involved in substituting for the resilient mortise and tenon joints utilized to hold the several panels of London together, mortise and tenon joints which are formed by direct frontal entry of the tenons into the mortises and by insertion of one or more blocks, which function as locking keys, endwise into the reentrant portions of the gap between each tenon and mortise, as suggested by Guimonneau.

"Appellant's arguments with regard to the 'wedge' shape of Guimonneau's blocks (5), and the lack of confronting 'shoulders' and 'ledges' urged into abutment with each other in London, are considered to be without patentable significance. Though Guimonneau shows his keys as wedge shaped, it is obvious that the keying function which he discloses does not require such shape. Moreover, London clearly discloses portions directly adjacent each of his tenons (58) and mortises (54) which may be termed 'shoulders' and 'ledges', and which are urged into abutment with each other."

Appellant argues that the resilient tongue-and-groove arrangement of London is not the equivalent of his mortise-and-tenon structure; that it is not obvious to substitute in London's structure the Guimonneau wedge-block; and that the Guimonneau wedges, in any event, do not function like the linear keys of appellant.

■ We have considered all of appellant's arguments but are constrained to agree with the board. In our opinion, appellant's inventive concept is suggested by Guimonneau; and we see no reason why one skilled in the art would not recognize the applicability of Guimonneau's dovetail mortise-and-tenon for use in the London structure. We realize that the wedges taught by Guimonneau are not identical with the linear keys of appellant. However, like appellant's keys, Guimonneau's wedges serve to hold the mortise-and-tenon as a joint in like fashion to appellant's joint. We see nothing unobvious in employing linear non-tapered blocking keys vis-a-vis tapered wedges in view of the keying concept taught by Guimonneau. As pointed out by the solicitor,

"The ordinary architectural designer may fairly be presumed in law to know of the London and Guimonneau building joints * * *. Moreover, he may reasonably be assumed to understand their operative principles and have imaginative capacity beyond the mere slavish substitution of an exact element of one in another. As stated by this Court in determining whether claims were patentable in view of a combination and modification of prior patents, 'proper inquiry should not be limited to the specific structure shown by the references, but should be into the concepts fairly contained therein' In re Bascom 43 CCPA 837, 230 F.2d 612."

We cannot see that appellant has done anything unobvious. Keyed mortise-and-tenon joints are old (Guimonneau); mortise-and-tenon joints broadly are old in the panelling art (London). Notwithstanding appellant's arguments to the contrary, all elements of appellant's combination function as taught by the art. The slight difference in key design is not in our opinion unobvious within the meaning of 35 U.S.C. § 103. We therefore sustain rejection (1).

 **509**

## Rejection (2)

Claim 53 differs from the claims in rejection (1), supra, in reciting a web connecting two blocking keys (resulting in a key as shown in appellant's Fig. 4, supra) and also in reciting that the tenon is in two parts with abutting faces attached to different panels.[1] The webbed key thus not only locks together the mortise-and-tenon, but also locks the two halves of the tenon.

The examiner cited the Swedish patent, Fig. 3 of which is reproduced below, to show the concept of blocking keys 11 connected by chordal web 10.

Fig. 3.

The examiner stated:

"Claim 53 is considered unpatentable over London in view of Guimonneau, applied as noted supra, and in view of the Swedish patent. The Swedish patent shows it is old to interconnect a pair of blocking members 11 similar to those shown by Guimonneau by a web means 10. To apply the interconnecting web concept of the Swedish patent to hold pairs of wedges 5 of Guimonneau in position appears to require no more than choice."

The board chose to rely only on London and the Swedish patent, stating:

"As indicated by the Examiner, the Swedish patent discloses a joint wherein the mortise portion (7) is oversize for frontal entry of a tenon (4) thereinto, and chocks (11) are provided in the reentrant clearances between each tenon and mortise, said chocks being connected together by a web (10) which occupies the 'chordal clearance' between each tenon and

mortise. It is felt that it would be quite obvious to one having ordinary skill in this art to employ joints as shown by the Swedish patent in place of the resilient joints of London, where such resiliency is not desired."

Appellant argues that the webbed keying block of the Swedish patent must be inserted *frontally* and thus does not function as appellant's *linearly* inserted keys. Further appellant argues that the web portion 10 of the Swedish structure does not function to hold the tenon itself together since the Swedish patent does not teach a split tenon.

We agree with the rejection. We note that claim 53 does not require that the keys be insertable linearly; it merely calls for "a linear key." Such does not distinguish from the Swedish keys, albeit they are inserted frontally. Although we agree with appellant that the Swedish patent does not expressly teach holding a split tenon by the web portion of the key, we see nothing unobvious in

1. Referring to appellant's Fig. 4, supra, the lower panel (lowermost unnumbered edge) is two pieces, each supporting one-

half the tenon which itself is split in two.

such expedient. Elementary mechanics dictates that a chordal web will tend to compress the tenon horizontally. Appellant simply uses this obvious fact to advantage. Furthermore, the key is merely complementary to the action of the mortise in holding two half-tenons together and this is shown in Guimonneau, a reference applied by the examiner, whose rejection the board affirmed though it felt that reference to be unnecesary. We thus sustain rejection (2).

### Rejection (3)

Claim 36 is the parent claim, claims 37, 48 and 50 being dependent therefrom. Claim 36 differs from the claims of rejection (1), supra, only in reciting "one or more of duplicate linear keys." Claim 37 recited multiple mortises-and-tenons per stringer with webs connecting the multiple keys. Claim 48 recites abutment of marginal lands (see discussion of appellant's Fig. 2, supra). Claim 50 recites webs connecting linear keys.

The examiner relied on the Swedish patent in view of Guimonneau; the board relied on the Swedish patent alone. The board stated:

> "Notwithstanding the Examiner's rejection of claims 36, 37, 48 and 50 as unpatentable over the Swedish patent in view of Guimonneau, it is our opinion that all of the structure defined in claims 36, 48 and 50 is clearly found in the Swedish patent *alone* * * *. In this regard it should be noted that the recitation in claim 36, 'inserted slidably', has no patentable import in an article claim and, hence, can in no way negative the disclosure of the Swedish patent. With regard to claim 37, it is considered that the provision of

multiple mortises and tenons (e. g., one behind the other) on the extremities of the elements (3) and (4) shown in figures 1–3 of the Swedish patent would be well within the province of one having ordinary skill in this art."

Appellant argues that the term "inserted slidably" is a structural limitation, thus patentably significant, and that multiple mortises-and-tenons are not taught or suggested.

We agree with appellant that "inserted slidably" is a structural limitation, but we do not see that it patentably distinguishes over the structure of the Swedish patent. As pointed out by the solicitor, "slidably" per se carries no connotation of direction so that the frontal insertion in the Swedish structure is "slidable" as is appellant's longitudinal insertion. As to multiple mortises-and-tenons, we agree with the examiner [2] who stated:

> "As the balance of claim 37 calls for a plurality of the mortise-and-tenon joints, it is considered that using a plurality of joints of the Swedish type would require no more than a mere duplication of the relationships shown by the Swedish patent, and as such, would be unpatentable, particularly in view of Guimonneau who shows the use of a plurality of such joints for joining panel-like members 1–1, Fig. 1, to be old in this art."

In all other respects, we agree with the board and sustain rejection (3).

### Rejection (4)

Claims 56–59 define appellant's mortise-and-tenon joint in combination with various arrangements of parallel disposed

---

2. Appellant's brief points out that the board's analysis of "multiple mortises and tenons (e. g., one behind the other)" is "devious and unrealistic" since the multiplicity claimed is fairly read to be side-by-side rather than end-to-end. Appellant states, "what good would key blocking portions do in spaces between mortises and tenons arranged one behind each other?", arguing that the claim must be read in light of the disclosure.

We agree with appellant that multiple mortises-and-tenons, in claim 37, contemplates side-by-side multiplicity. We also agree that the Swedish patent per se does not suggest such expedient. However, we agree with the examiner that Guimonneau fairly teaches such multiple mortises-and-tenons and that the Swedish patent suggests web interconnection of blocking keys.

panels. The claims are rejected as unpatentable over the French patent in view of Guimonneau. Fig. 2 of the French patent adequately describes the teaching therein for purposes of this appeal and is reproduced below:

Fig. 2

The examiner carefully outlines the rejection in his answer:

"Claims 56–59 are considered unpatentable over the French patent * * * in view of Guimonneau. Claim 58 [3] is exemplarily applied to the references in the following manner.

"The claimed four panels meeting in two pairs at two coextensive parting lines spaced apart from each other is read

3. Claim 58:

58. In a structure, four panels meeting in two pairs at two coextensive parting lines spaced apart from each other, a structural member extending interjacent said panel pairs along said parting lines and having a profile extremity at a distance from each pair, stringers extending side-by-side on each pair of said meeting panels and bearing profile extremities in joint opposed alinement with the structural member extremity distant therefrom, said stringer and structural member extremities having longitudinal reentrant mortise-and-tenon formations thereon congruent with each other and having each mortise thereof oversize for frontal entry of a tenon thereinto with reentrant clearances therebetween, and one or more linear keys telescoped slidably into said clearances between said formations entered into each other for blocking said stringers relatively immovably against separation frontally from said structural member and for laterally locking said side-by-side stringers to each other, said blocking and locking by said one or more keys causing said stringers and said structural member to coact as a unitary stress member between said panels.

as panels *a - a* in the foreground of Fig. 2 of the French patent. The claimed 'structural member extending interjacent said panel pairs along said parting lines and having a profile extremity at a distance from each pair' is read as element *b*; the base portions of the dovetail mortises therein being read as the claimed 'profile at a distance'. The 'stringers extending side-by-side on each pair of said meeting panels and bearing profile extremities in joint opposed alinement with the structural member extremity distant therefrom, said stringer and structural member extremities having longitudinal reentrant mortise-and-tenon formations thereon congruent with [sic] other' are read as the dovetail elements on the edges of the panels *a* and the co-operating dovetail mortise in member *b* of the French patent. * * *

"The dovetail joint shown by the French patent is not designed for joining the dovetail elements by 'frontal entry' as claimed. However, the Guimonneau patent shows that the use of a plurality of dovetail joints which permit frontal entry is old in the laterally spaced panel construction art. It is still considered that using dovetail joints having a design such as that shown by Guimonneau in place of those shown on the French patent would be an obvious expedient to a skilled workman in this art. Note that the Guimonneau patent shows 'having each mortise thereof oversize for frontal entry of a tenon thereinto with reentrant clearances therebetween', as elements 2 with the claimed clearance shown between elements 3. The claimed 'one or more linear keys telescoped slidably into said clearances between said formations entered into each other for blocking said stringers relatively immovably against separation frontally from said structural member' is shown as the tapered blocks or wedges 5 of Guimonneau. It is noted in regard to the wedges 5 that the same extend a considerable percentage of the length of their co-acting faces 3 and that there is ample room for them to extend entirely across the faces 3 without changing their co-action in the Guimonneau structure. The additional functional phrase 'and for laterally locking said side-by-side stringers to each other, said blocking and locking by said one or more keys causing said stringers and said structural member to coact as a unitary stress member between said panels' is considered to be as readable on the structure shown by the references as combined as it does on appellant's claimed structure.

"The other claims, i. e., claims 56, 57 and 59 of this group are deemed similarly readable on the reference structures."

The board added:

"Insofar as the Examiner's rejection of claims 56–59 as unpatentable over the French patent in view of Guimonneau is concerned, we are in full agreement therewith. Manifestly no invention would be involved in substituting the dovetail type joints of Guimonneau, which enable joining of the dovetail elements by 'frontal entry', for the joint arrangement shown by the French patent. Appellant's contention that elements (b) of the French patent do not have a profile extremity at a distance from element (a) is without merit. The profile extremity of the ends of each element (b) necessarily includes the edges defining the mortises as well as the portions abutting elements (a). It follows, therefore, that elements (b) do, in fact, have profile extremities at a distance from each panel [elements (a)] (sic), as called for in these claims. It is to be noted that the claims do not specify how great the 'distance' is. Similarly, the dovetail elements on the edges of elements (a) may properly be read as stringers bearing profile extremities."

■ We have considered appellant's arguments but find no error in the rejection. We thus sustain rejection (4).

Where we have quoted from the board's opinion statements that "no invention" would be involved in making certain substitutions, etc., we have interpreted it as meaning that they would have been ob-

vious within the purview of 35 U.S.C. § 103 so as to relate the rejections to the conditions of patentability as laid down by statute.

The decision of the board is affirmed.

Affirmed.